```
1               BEFORE THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,        .
                                      .   Case Number 21-cr-88
4              Plaintiff,             .
                                      .
5         vs.                         .
                                      .
6    RONALD L. SANDLIN and            .
     NATHANIEL DEGRAVE,               .   December 3, 2021
7                                     .   2:01 p.m.
               Defendants.            .
8    - - - - - - - - - - - - - - - -

9               TRANSCRIPT OF MOTION HEARING
          BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10               UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the United States:      JESSICA ARCO, ESQ.
                                 JAMES PEARCE, ESQ.
13                               United States Department of Justice
                                 950 Pennsylvania Avenue Northwest
14                               Washington, D.C. 20530

15   For Defendant Sandlin:      JERRY R. SMITH, JR., ESQ.
                                 717 D Street Northwest, Suite 310
16                               Washington, D.C. 20004

17   For Defendant DeGrave:      JOHN M. PIERCE, ESQ.
                                 John Pierce Law
18                               21550 Oxnard Street, Third Floor
                                 Woodland Hills, California 91367
19
                                 WILLIAM LEE SHIPLEY, JR.
20                               Shipley Law Offices
                                 P.O. Box 745
21                               Kailua, Hawaii 96734

22   Official Court Reporter:    SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
23                               U.S. Courthouse, Room 4704-B
                                 Washington, D.C. 20001
24                               202-354-3284

25   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2          (All participants present via video conference.)

 3              COURTROOM DEPUTY:  We are in Criminal Action 21-88,

 4     United States of America versus Ronald Sandlin and Nathaniel

 5     DeGrave.

 6          For the United States, Your Honor, we have Ms. Jessica Arco

 7     and Mr. James Pearce.  Representing Mr. Sandlin, we have

 8     Mr. Jerry Smith, and representing Mr. Nathaniel DeGrave, we have

 9     Mr. John Pierce.

10              MR. PIERCE:  And also we have Mr. Bill Shipley, who

11     has been admitted pro hac vice.

12              COURTROOM DEPUTY:  Yes.  Forgive me.

13              THE COURT:  Good afternoon, everyone.  I apologize for

14     the delay.  We've had a failure from the Clerk's Office to

15     confirm the come-up today.  So I do apologize.  D.C. Jail did

16     not have Mr. Sandlin and Mr. DeGrave ready to go, and that's our

17     fault.  So I do apologize.

18          I want to assure everyone, I've read the briefs fully, and

19     I've heard argument related to these motions in other cases as

20     well.  Given the delay and that I have another matter later this

21     afternoon, I really would like the attorneys to focus the

22     arguments on the vagueness challenge and the discussion of the

23     meaning of corruptly in 1512(c)(2).

24          Who would like to begin?  Is that you, Mr. Smith?

25              MR. SMITH:  Yes, Your Honor.  I can begin.  Thank you.
```

1      Is Your Honor interested in what corruptly means in that

2   sense?

3              THE COURT:  That argument that you've raised, the due

4   process argument.

5              MR. SMITH:  I guess there's two levels to the

6   argument.  My argument is that if you read --

7              THE COURT:  Sorry to interrupt, Mr. Smith.

8      Can we get -- is it Mr. DeGrave who needs to be muted?

9   We're getting a lot of background noise.  All right.  Thank you,

10  sir.

11     Mr. Smith, so I'm not trying to restrict you in the

12  argument, but I want to focus on that rather than the official

13  proceeding argument or the *Yates* argument.  I feel like your

14  briefs capture that quite well.  You can add what you would

15  like, but what would be most helpful to me in the time we have

16  is to focus on the other argument.

17             MR. SMITH:  Certainly, Your Honor.  I do feel that

18  maybe my brief was a little deficient on the official proceeding

19  thing, but I will focus on what Your Honor wants me to focus on.

20     My argument is that if you read the statute -- I guess

21  there's two levels to it.  One is that if you read the statute

22  the way the government is positing that you should read the

23  statute, which that is, any corrupt activity that would

24  obstruct, influence, or impede an official proceeding is

25  covered.  And they say that it's cabined by their definition of

corrupt, which they say is consciousness of wrongdoing, which, I
mean, basically that's just saying it's not a strict liability
crime, which it seems to me that hardly cabins its application
at all.  Of course it's not a strict liability crime.  It's a
20-year felony.  So really, consciousness of wrongdoing does
very little to restrict its application.

And they also say the nexus requirement, that the defendant
engaging in such conduct has to have some awareness of an
official proceeding and a realization that his activities might
affect it.  But other than that, it's just a broad ban,
according to the government, on any activity that would have an
effect on official proceeding, which is way too broad and it's
not what Congress intended.

Congress could enact a law that made everything illegal,
and then the government could be free to go around and choose
who it wanted to prosecute for its own special reasons.  And
that's sort of how the government is interpreting 1512(c)(2)
here.

But obviously, Congress didn't intend to authorize that, to
give the government that kind of broad power to go around
deciding who to prosecute for its own special reasons.

And the reading that the government gives 1512(c)(2) is
precisely that.  They say that it's not vague because it does
provide some standard, but they really haven't articulated what
their standard is.  The reading of 1512(c)(2) that they give

1    certainly could apply to many of the people who were present in

2    the Capitol on January 6 who have not yet been -- have not been

3    charged with 1512(c)(2).  It could also be applied to people

4    that have interfered with other proceedings before Congress or

5    before confirmation hearings, any kind of hearing like that.

6         This is the first time -- and the government can correct me

7    if I'm wrong, but I've looked into it, and I've talked to lots

8    of other people.  This is the first time that the government has

9    ever charged somebody under 1512(c)(2) for engaging in

10   protest-type activity that occurs while the official proceeding

11   is in progress.

12        THE COURT:  What's alleged is, to be fair, a little

13   more than that here.  Hasn't the government alleged with respect

14   to both defendants that they engaged in assaults on federal

15   officers, and is that independent unlawful conduct enough to

16   satisfy corruptly, at least in this case?

17        MR. SMITH:  No, I don't think so.  I mean, that's a

18   separate matter.  They may have engaged -- the allegations are

19   they may have engaged in assault and they're, therefore, guilty

20   of violating Section 111.  But that doesn't mean they're,

21   therefore, automatically -- they're guilty of violating Section

22   1512(c)(2).

23        THE COURT:  Because of course, the government would

24   have to prove that assault and that it was done with the

25   specific intent to obstruct or impede the official proceeding

1   here.

2       So those things coupled together, why isn't that enough to

3   eliminate any vagueness concerns with how corruptly is defined,

4   at least in this case?

5       I hear your point about it applying in a broad, broad range

6   of cases, but my question is, with the case we have here where

7   there's clearly wrongful, unlawful conduct that the government

8   will have to prove was done with the specific intent in order to

9   impede the official proceeding, why doesn't that eliminate any

10  vagueness concerns when it's so obviously unlawful to assault a

11  federal officer?

12          MR. SMITH:  I'm not sure that -- and that's an

13  interesting point, Your Honor.  I'm not sure that corruptly is

14  any better in the 111 counts.  I haven't actually thought about

15  that, that the same problems that are with the corruptly adverb

16  in 1512(c)(2) might also be present in the 111 counts.

17      And I'm sorry, I haven't briefed that, and frankly, until

18  Your Honor mentioned that, it never really occurred to me.

19          THE COURT:  Corruptly is not a part of the mens rea

20  for the assault statute, is it, assault on a federal officer,

21  knowingly and intentionally assault a federal officer?

22      So that's my question.  If you assume the allegations are

23  true, if they can prove that and they can prove that those

24  actions were undertaken with the specific intent in order to

25  obstruct the official proceeding, why in this instance at least

1    is that not sufficient?

2         MR. SMITH:  But who knows what they're looking at when

3    they decide whether the defendant's violated 1512(c)(2).  Who

4    knows what definition of corrupt they are using.  They may find

5    him guilty -- or what if they don't find him guilty of assault

6    and then they do find him guilty of obstruction?  We've got to

7    look at that scenario.

8         Your Honor's hypothetical is if they get found guilty of

9    the assault, then maybe you can bleed that over and find that

10   they acted corruptly in regards to the corrupt state of mind,

11   but what if --

12        THE COURT:  I'm not being clear.  I'm not saying that

13   a conviction -- you know, meeting the elements of assault

14   automatically means they meet the elements under 1512.  They

15   still have to prove the nexus and the specific intent and if the

16   assault was a means by which the defendants intended,

17   specifically intended to obstruct the official proceeding.

18        But go ahead.

19        MR. SMITH:  I apologize, Your Honor.  I can be

20   somewhat slow-witted.  It still seems to me that -- I mean, we

21   hope to win on the 111 counts, and what happens if Mr. Sandlin

22   is acquitted on the 111 counts but still gets found guilty on

23   the 1512(c)(2) count.  I mean, they are divorced in that sense.

24   The jury instructions are going to separate the two.  The jury's

25   going to consider the two independently of each other, which

still brings me back to my vagueness problem with the word corruptly.

I mean, with corrupt, too, we don't really know what corrupt means.  It's not clear from the legislative history what corruptly means.  I know the government thinks it means consciousness of wrongdoing.  But I think it must mean something more than that.  Like I say, just consciousness of wrongdoing is saying really nothing more than it's not a strict liability crime, which it obvious is not.

I mean, I would refer to the *Poindexter* case where our circuit addressed the meaning of corruptly.  I know that was in regards to a different statute.  That was in regards to 18 U.S. Code 1505, but still the same corruptly.

And *Poindexter* was lying to Congress.  Mr. Poindexter lied to Congress, and the question was was that a violation of 1505.  The real question was was his conduct corrupt conduct.  And they said that the corruption -- they said that what they called an intransitive meaning of the word corrupt, where you're just doing something with a morally corrupt state of mind, that's too vague.  They theorize that maybe if corrupt meant in the transitive sense, that you were corrupting somebody else, that could possibly get over the vagueness problem, but only if you were corrupting somebody else to violate a known duty.

They weren't clear if that's what the legislative history of the support of that reading of the word corruptly in the

1    statute of 1505, but they did posit that if that's what the

2    legislative history would have shown, that might have been an

3    understanding of the word corruptly that is not

4    unconstitutionally vague.

5         They didn't really have to get into that issue because they

6    said even if that's what Congress did intend, it still wouldn't

7    have applied to Mr. Poindexter's conduct, which was lying to

8    Congress.  So they just said it wasn't -- the statute was vague

9    as applied to Mr. Poindexter.

10        They did allow for the possibility that if the legislature

11   had intended for corruptly to mean trying to corrupt someone

12   else to disobey a legal duty, that that might have -- if that's

13   what Congress intended, that might have passed constitutional

14   muster on vagueness grounds.

15        I don't know what the legislature intended here.  The

16   legislative intent for Section 1512(c)(2), the current

17   1512(c)(2) is pretty sparse, frustrating so, in fact.  So we're

18   kind of moving in a vacuum.  There's really nothing to indicate

19   what they meant.  They very well could have meant corrupt in

20   just the general sort of sense that the government reads

21   corruptly.  If that's the case, then I think even under

22   *Poindexter* the corruptly would be too vague and

23   unconstitutional.

24        I don't know if that's really answering Your Honor's

25   questions.  I feel like I'm not addressing what Your Honor is

1    asking me.

2          THE COURT:  That's helpful.  Again, I don't mean to

3    restrict your arguments in the other areas, if you quickly want

4    to supplement those.  Rest assured, I've read briefs in a number

5    of these cases.  So to the extent you feel like your brief

6    hasn't addressed the issue of official proceeding as well as you

7    had hoped, by all means, briefly tell me what those arguments

8    are, and perhaps I've seen them in another case.

9          MR. SMITH:  If I could continue just for a moment on

10   the vagueness charge.  I mean, I think the vagueness issue is

11   not just arbitrary enforcement.  Here, the government's reading

12   is so vague that they can apply it to whoever they want to, and

13   they haven't applied it in a uniform way, nor have they

14   articulated a standard that explains why they haven't charged

15   other people that were present in the Capitol on January 6 or

16   other people, say, who interfered with other congressional

17   hearings.

18       And again, as I say, they've never used this, to my

19   knowledge, to prosecute people for engaging in disruptive

20   conduct that occurs while the official proceeding is occurring.

21       I guess the other aspect of the vagueness charge, and I'm

22   not sure if this is what was concerning Your Honor, is just sort

23   of the notice argument.

24       I was sort of thinking what's a good way to analogize this,

25   and I came up with this, however silly it may sound.  If you --

1        I tell my wife that I'm going out to buy groceries.  I tell my

2    wife a la 1512(c)(1) that I'm going out to buy groceries and a

3    la 1512(c)(2) some other stuff.  I put her on notice that I'm

4    going out to buy groceries and things that are sort of like

5    groceries.  So if I go out and I come home and I've got some

6    groceries and I've got some stuff that I picked up at the

7    hardware store, she had fair warning.  She knew I was going out

8    to buy that kind of stuff.  I put her on notice that I was going

9    out to buy that kind of stuff.

10       But if I go out and I buy some groceries and something more

11   exotic, that may not be the case.  For instance, if I go out and

12   I come home with groceries and a new Lamborghini, she's going to

13   say what the heck, you didn't put me on notice that you were

14   going to go out and buy a $300,000 automobile, and I'm not going

15   to be heard saying oh, but I told you I was going to buy some

16   other stuff; plain meaning of my words, you know, a Lamborghini

17   is other stuff.  She's going to say no, you gave me this example

18   of groceries and then used other stuff, so I naturally assumed

19   that by other stuff you meant things that were like groceries,

20   and in fact, not only did you not put me on notice, you deceived

21   me by giving me the example of groceries to make me think that

22   you were just going out to buy stuff like groceries, but really

23   what you were going out to do was to buy a Lamborghini.  And

24   she's going to be 100 percent right with that.

25       So the 1512(c)(1) and (c)(2) are the same way.  We have the

1    sort of specific provision and this otherwise provision in

2    1512(c)(2).  Anyone reading that is going to think okay, they're

3    talking about conduct like the conduct in 1512(c)(1), altering,

4    destroying, mutilating documents, records, that kind of stuff,

5    and other stuff that's sort of like that.  That's what you're

6    put on notice for.  You're not put on notice for some really

7    incredibly broad and novel construction of 1512(c)(2).  It's

8    just not -- it's just not what it puts you on notice for.  So

9    it's vague for that reason as well, and I wanted to make that

10   point.

11              THE COURT:  But don't you think the statute fairly

12   puts you on notice that you can be prosecuted for obstructing an

13   official proceeding?

14        And you can do that in different ways.  You can do that in

15   the way that's itemized in (c)(1), or you can do it in some

16   other ways.  And the government's theory here is the other ways

17   were -- I think the government's theory is assaulting federal

18   officers was a means to impede or obstruct the proceeding from

19   actually happening, from the senators and representatives being

20   present for the proceeding, for the evidence being present for

21   the proceeding.

22              MR. SMITH:  Your Honor, I would have to look at the

23   indictment.  Does it mention the assaulting of police officers

24   in the 1512(c) counts?

25        I'm not sure.  But you're not put on notice what -- you're

1    put on notice that it's something like altering or destroying

2    documents.  That's what -- it's not conduct that occurs while

3    the proceeding is going on.  It's conduct like -- that's what

4    you're put on notice for.  You can't take it out of context and

5    say -- I mean, if the statute had just said all by itself it's a

6    unitary proscription against corruptly obstructing, influencing,

7    or impeding an official proceeding, if that's what the statute

8    said and there were no other parts of the statute, yeah, then

9    you would be on notice that it's sort of this broad, sweeping

10   statute.

11        But it doesn't.  It has the 1512(c)(1) part which deals

12   specifically with altering and destroying documents and evidence

13   and tangible stuff and the proscription against -- the

14   1512(c)(2) proscription against obstructing and impeding.  And

15   because of that example in 15 (c)(1), you assume that 15 (c)(2)

16   is addressing specific -- things that are like destroying

17   documents.  That's what you're put on notice about.  You're not

18   put on notice that it can involve other conduct.  However

19   illegal that other conduct may be under other statutes, you're

20   still not put on notice that it's illegal under 1512(c)(2) or

21   under 1512(c).

22             THE COURT:  Okay.  Any other points you want to make,

23   Mr. Smith, before I move on to -- is John Pierce arguing for

24   Mr. DeGrave?

25             MR. PIERCE:  Actually, Your Honor, Mr. Shipley is

1     going to argue on behalf of Mr. DeGrave.

2              THE COURT:  All right.  Let me turn to Mr. Shipley,

3     and I will give you a chance after I've heard from the

4     government to make any additional points, Mr. Smith.

5          Mr. Shipley?

6              MR. SHIPLEY:  Yes, Your Honor.  I would, obviously,

7     adopt Mr. Smith's arguments, and I really just want to build on

8     it just briefly.

9          I've read the transcript from two weeks ago in the Reffitt

10    case.  So I know the Court has been through all of these issues,

11    and I doubt that anything I say here is going to provide any

12    voila moment of enlightenment.  So I don't want to beat a dead

13    horse on these issues that are clearly being seriously

14    considered in chambers by several judges.

15         But I think a point I made in the brief reply that I

16    filed -- we weren't in the case -- the cases were combined later

17    after the briefing started here.  The point that -- the sweeping

18    catch-all provision really only has one cap and a principle, and

19    that's use of the word corruptly.  And obviously, (c)(1) has,

20    you know, actus reus, facts, rule, allegation, and then (c)(2)

21    says corruptly obstruct.

22         Well, that's an exception.  As I pointed out in my brief,

23    when you say corruptly obstructing is illegal, by definition

24    you're saying noncorruptly obstructing is lawful.  So corruptly

25    becomes the line drawing.  It's the line in the sand.  Don't

1    step over this line.  Don't transition from noncorrupt

2    obstruction to corrupt obstruction.

3         That's where the lack of a definitive understanding of what

4    the word corruptly envisions becomes problematic.  And that is

5    a -- that's not an as-applied challenge; that's a facial

6    challenge.  So if the statute fails as a facial challenge, you

7    don't even get to the as-applied challenge that the Court has

8    raised, which is well, isn't the assaultive conduct, if proven

9    by the government to be, you know, intended to interfere with

10   the proceeding, that is the obstructive behavior that is corrupt

11   because it's a violation of law.

12             THE COURT:  Mr. Shipley, you're raising a facial

13   challenge here as opposed to --

14             MR. SHIPLEY:  I did in my -- in my reply brief, which

15   is all we filed was in the last round of briefing in response to

16   the government's opposition, and it wasn't very long because we

17   weren't in the case for long enough to really tease it out.

18        But the problem is that if -- like I just said, if

19   corruptly obstructing is a crime, then noncorrupt obstruction is

20   not a crime.  So there is some obstructive conduct that is

21   lawful.  Where is that line?  Can the government define that

22   line in a meaningful way, not for a jury, that would be as

23   applied, but for a common, ordinary man?  How does a defendant

24   on the grounds of the Capitol know that he steps beyond that

25   line in the sand?

1          THE COURT:  This is a term that exists in many, many

2     other statutes that have been upheld.

3          MR. SHIPLEY:  But it's generally linked -- and I don't

4     have a list of the statutes where it's been found, but it's

5     linked to an actus reus.  Here, we don't have an actus reus.

6          THE COURT:  You can corruptly obstruct, influence, or

7     impede.  Why isn't -- again, I will ask the question, if

8     corruptly is defined to encompass independently unlawful

9     conduct, why doesn't corruptly obstruct constitute a crime?  Why

10    is a defendant not on notice?

11         MR. SHIPLEY:  For the same -- I mean, I can't -- I

12    can't elaborate beyond what I just said, which is that

13    noncorrupt obstruction, full obstruction, or noncorrupt impeding

14    or noncorrupt influencing are all crimes because the statute

15    criminalizes, uses the term corruptly to establish the

16    criminality of those next three words.  So if those same three

17    words involve conduct not married to the statutory use of the

18    term corrupt, which we know from *Poindexter* on its own doesn't

19    define anything, where it's used in other statutes, it's linked

20    to a defined event, you know, destroying evidence, hindering

21    witnesses, as has been argued in other cases, defeating a

22    fact-finding or adjudicative function of Congress as opposed

23    to --

24         THE COURT:  I'm not going to come up with the cite,

25    but it's used as corruptly persuade in other statutes.

1          MR. SHIPLEY:  But I think persuading is influencing

2    somebody's testimony or somebody's, you know, presentation of

3    evidence or presentation of information in an adjudicatory

4    fashion or a decisionmaker, you know, persuading a

5    decisionmaker.  But so I don't think that -- I think that's much

6    more definitive than obstructing or influencing.

7          And again, as I've said, I've read briefing in other cases.

8    I've read the transcript in at least two hearings where these --

9    it's almost like the analysis becomes circular in some regards,

10   and I don't portend to offer any, you know, legal insights that

11   have not already come across the Court's desk.

12         On the -- if I could just touch on one thing briefly on the

13   official proceeding that I raised, and this goes specifically to

14   the indictment.  The indictment here alleges that the official

15   proceeding in the conspiracy is the certification of the

16   electoral vote.  And that is not a Twelfth Amendment issue.

17   That is Section 15, 3 U.S.C. Section 15, the congressional

18   certification of the electoral vote.  Because that's the

19   official proceeding that is defined in the conspiracy count, the

20   facial constitutionality of Section 15 is -- has to be

21   addressed.

22         So I know the Court has already expressed opinions in other

23   cases on that, and we've had the briefing in this case on that

24   question.  But I think because of the language used in the

25   indictment of the conspiracy count in this case -- which, by the

1    way, is not repeated in the substantive 1512 count.  Only the

2    conspiracy to violate 1512 says it's the counting of electoral

3    votes.  The substantive 1512 count does not include the same

4    language.  It just says a congressional proceeding, which I

5    don't know if that is accidental or purposeful.

6        And I guess my last comment would be I know in the Reffitt

7    case the Court directed the government to produce a form of a

8    bill of particulars where the government laid out its theory,

9    without having to confine itself to facts, which sometimes

10   happens in a bill of particulars, but directed the government to

11   lay out its theory for the violation of 1512.

12       I think given some of the issues in this case, that would

13   be helpful.  I think the conspiracy count likely includes more

14   facts here in the overt acts than was the case in Reffitt, which

15   I'm not sure there was a conspiracy count, so I don't think

16   there were overt acts set forth.  But that might solve some of

17   these issues that seem to exist.

18           THE COURT:  Mr. Shipley, back to your point that

19   corruptly is being used here differently than in any other

20   statute, what do you say about Section 1505 that applies to --

21   can you hear me?

22           MR. SHIPLEY:  Yeah, I can.  I don't have it right in

23   front of me, but I'm happy to answer your questions.

24           THE COURT:  Let me just summarize it for you.  It says

25   that it is a crime to corruptly -- and I'm paraphrasing here,

1    corruptly obstruct the due administration of the law or the due

2    and proper exercise of the power of inquiry, and that is for any

3    congressional inquiry.

4         So given that, why doesn't this work here where we have

5    corruptly obstructing an official proceeding, which, if I agree

6    with the government's position here, the official proceeding is

7    a formal proceeding of Congress like we're dealing with here?

8    Why does that not solve the vagueness problem?  When comparing

9    those two, they're quite similar.

10              MR. SHIPLEY:  But 1505 -- if I'm not mistaken, 1505,

11   as with almost every other provision of Chapter 73, it deals

12   with interference of a fact-finding process or spoliation of

13   evidence or defeating the ability of the investigators,

14   congressional or otherwise, to gather information.

15        And the government's interpretation of corruptly

16   influencing an official proceeding here is completely detached

17   from every other provision of the obstruction statutes.  It's

18   the only one -- the government's use of the statute here is the

19   only instance when it -- and I raise this issue with regard to

20   how far this would stretch, is okay, well, what kind of

21   proceeding of Congress does not fall within the official

22   proceeding definition used here.  And I don't want to go back

23   into what is an official proceeding, but is there anything that

24   Congress might do on a daily basis that would not be subject to

25   an official corruption or a corrupt obstructing charge if the

1    government chose to allege it in an indictment.

2         And I raise the two issues, like the special order speeches

3    that take place in the middle of the night.  If somebody

4    interfered with a broadcast of those, is that a violation of

5    1512 as being -- obstructing an official proceeding.

6         If you take official proceeding and completely divorce it

7    from the fact-finding process, which the government is doing

8    here, then you have extended it so far that it has no limiting

9    feature, and it essentially becomes the Department of Justice

10   will tell us in an indictment when there is obstruction or

11   corrupt obstruction.

12         THE COURT:  Anything else you want to add right now,

13   Mr. Shipley?

14         MR. SHIPLEY:  No, Your Honor.  Thank you.

15         THE COURT:  All right.  Mr. Pearce, I want to turn to

16   you.  Before I hear your argument, if you can confirm for me, so

17   in a separate case, the government in the Reffitt case has

18   indicated that the government intends to show that the

19   defendants violated Section 1512(c) in three ways, by acting

20   with a corrupt intent to, one, stop Congress's certification of

21   the Electoral College vote from timely occurring; two, impeding

22   lawmakers from participating in the proceeding; and three,

23   preventing lawmakers from considering the ballots, the lists,

24   et cetera, at the certification proceeding.

25         Is it fair to say that those same three theories would

1    apply here in this case?

2              MR. PEARCE:  Yes, that's fair to say.  I think the

3    nature of the evidence, as Your Honor has already indicated,

4    would be different in this case and some of the assaultive

5    conduct that took place in this case I don't believe was present

6    in Reffitt.  I think that would fit within sort of the first

7    category of, broadly speaking, the first theory that the

8    government would pursue.  But that's correct as a matter of the

9    broad categories that the government would rely on.

10             THE COURT:  In the Reffitt case, was he not engaged in

11   attempted assaults?  I understand it wasn't charged, but wasn't

12   some of the conduct analogous to that here?

13             MR. PEARCE:  So I think in the Reffitt case he

14   certainly engaged in threatening behavior and issued threats

15   towards lawmakers, and I think that would certainly be relevant

16   and something that the government would adduce and call

17   attention to at trial, but I don't believe that he engaged in

18   the type of directly assaultive behavior and was not, I don't

19   believe, charged in a 111 count for assaulting law enforcement

20   officers.

21        So again, I think the government, we would rely on similar

22   evidence insofar as establishing the consciousness of wrongdoing

23   part of the corruptly definition, but obviously, the facts will

24   be different in these two different cases.

25             THE COURT:  I don't want to digress into Reffitt too

1    much, but I understood that he was making threats at the time of

2    the interaction with the Capitol police officers, or are you

3    talking about the threats the government would rely on in that

4    case are e-mails that he sent?

5              MR. PEARCE:  So I'm not precisely clear on when the

6    threats were.  I think they were close in time or around the

7    time of the certification proceeding.  And so I think that that

8    would -- the government would argue that offense is both his

9    intent to obstruct as well as wrongfulness.  But I do not know

10   precisely when those threats were made relative to --

11             THE COURT:  All right.  So the government isn't

12   relying on -- it had argued in the other case that it

13   potentially would argue that the defendants intended to

14   intimidate members of Congress or the vice president from voting

15   a certain way.  That's no longer a part of the government's

16   theory in this case either?

17             MR. PEARCE:  So I think yes, to be precise about it,

18   it was a corruptly influencing theory.  I think our second

19   theory about taking actions to prevent members of Congress,

20   lawmakers, the vice president from participating in their

21   constitutionally required duty to certify the Electoral College

22   results might encompass some of that conduct, but we're not

23   relying on a theory that the defendants here or in the Reffitt

24   case were seeking to have the lawmakers vote a certain way or

25   take a particular action.

1      THE COURT:  So just to be clear, I understood from

2  your filing that at least the proposed jury instruction, which I

3  know it's premature to get into the weeds about right now, but

4  the government isn't relying on the verb influence?

5      MR. PEARCE:  That's correct.

6      THE COURT:  In that case or in this case; right?  The

7  government's theory is just there was an attempt to obstruct and

8  impede; correct?

9      MR. PEARCE:  That's correct.

10      THE COURT:  All right.  Mr. Pearce, help me understand

11  the government's position on the meaning of the word corruptly.

12  Is it -- as some courts have discussed, is it a means definition

13  or a purpose or both?

14      MR. PEARCE:  So the word corruptly, as Your Honor

15  notes, shows up all over the place in the law, and at times,

16  like the word willfully, it will take on a different meaning in

17  a different context.  Corruptly, when used in bribery statutes,

18  will entail kind of a quid pro quo.  When it's used in tax

19  obstruction cases, it has a particular meaning about trying to

20  secure an improper benefit or an advantage.

21      The best reading of corruptly here is one that I think

22  resembles what Your Honor read earlier, which I believe is the

23  definition in 1515(b), which is the post-*Poindexter* definition

24  that Congress supplied for corruptly as used in 1505.

25      Now, clearly, that doesn't apply, and in fact, 1512(c)(2)

1   was enacted after Congress had already provided that definition,

2   the definition in 1515(b).  But that's a definition for at least

3   a type of congressional obstruction, and that definition, and I

4   know this is a roundabout way of getting to your question, sort

5   of mixes the two.  It talks about acting with improper purpose,

6   either personally or towards others, and I think that that does

7   away with the transitive -- intransitive or transitive piece

8   from *Poindexter*, but then it sort of quickly moves over into

9   means or the conduct and gives some examples like misleading,

10  false statements, or destroying documents.

11       So the definition that we think is the correct definition

12  here, again the consciousness of wrongdoing plus intent to

13  obstruct, it's both of those pieces operating together.  I

14  think --

15            THE COURT:  Sorry.  Let me stop you there.  I just

16  want to make sure I understand.  Are you saying both are

17  necessary, or you're just choosing to proceed with both in this

18  case and similar January 6 cases?  Do you think that corruptly

19  has to mean both of those things at once, or is it an either/or

20  potentially?

21            MR. PEARCE:  If by both of those things the Court

22  means intent to obstruct and consciousness of wrongdoing, yes,

23  we think that both of those are required, but I'm not sure --

24            THE COURT:  I don't mean that.  So the intent to

25  obstruct in the statute, that's different language.  Corruptly

1   is set out by itself.  Right?  The statute does include

2   specific --

3           MR. PEARCE:  1512(c)(2) does not include intent

4   language other than through corruptly is our position.

5           THE COURT:  But still, 1512(c)(1) has an intent to

6   impair, but you don't read that to mean an intent to obstruct

7   the proceeding?  That's just to impair -- that language with

8   intent to impair the object's integrity or availability for use

9   in an official proceeding, that doesn't capture some intent to

10  impair the proceeding or to obstruct the proceeding?

11          MR. PEARCE:  Clearly, as to 1512(c)(1), that

12  encompasses an intent to render the object unavailable for the

13  official proceeding, but it doesn't, at least on its plain

14  terms, say that there's an intent to thereby undermine or

15  obstruct the proceeding itself.  That's what's built into -- I

16  think that that requirement still exists, but it's not in the

17  words "intent to render the object unavailable."  That's built

18  into corruptly that applies to both.  So the corruptly piece at

19  the top, that's what encompasses both the intent to obstruct and

20  the wrongfulness.

21          THE COURT:  There's other statutes, though, that have

22  corruptly, and then it also has intent to obstruct; right?

23  Aren't there other obstruction statutes?  And doesn't corruptly

24  have to mean something different?  Wasn't this the point that

25  Judge Silberman discussed in *North*?

1          MR. PEARCE:  I'm not aware of any other statutes that

2     use corruptly alongside attempt to obstruct.  There's certainly

3     other statutes that will use corruptly alongside other things

4     like threatens or by force or things like that.  But -- I,

5     obviously, could be wrong.  I just -- I don't know a statute

6     that we've been talking about that has corruptly and with intent

7     to obstruct sitting beside each other.

8          THE COURT:  But 1505, a defendant can act corruptly to

9     influence, obstruct, or impede the due administration of the

10    law.  That sounds an awful lot like two separate things.

11         MR. PEARCE:  That to me sounds exactly like

12    1512(c)(2).  And as Your Honor was, I think, saying earlier,

13    this is the government's position, influence, obstruct, impede,

14    I'm not sure it's quite the same, but those are the actus reus.

15    Those are not impressions of what was intended.  That's the

16    actual conduct that the defendant is engaging in.  That's

17    distinct from an attempt to obstruct or the wrongfulness piece.

18         THE COURT:  So you think corruptly has to include an

19    intent to obstruct or impede an official proceeding?

20         MR. PEARCE:  Yes, a specific intent to do so, at least

21    as far as 1512(c)(2) goes.  Again, corruptly is used in the law

22    in lots of different contexts, but certainly, here and generally

23    in Chapter 73, I think corruptly builds into it the intent to

24    obstruct the official proceeding, as well as the consciousness

25    of wrongdoing.

1          THE COURT:  Okay.  So you have to have both means and

2     purpose?

3          MR. PEARCE:  Yes, I think that's right, and I think

4     that that in some ways helps to address what I think I

5     understood Mr. Shipley's question or point to be, which is can

6     there be some behavior that encompasses the intent to obstruct

7     but is not corrupt.  I think the answer to that is clearly yes.

8     I think the *North* court provides an example of that, and Your

9     Honor may have seen this in the proposed jury instructions that

10    the government filed yesterday in the Reffitt case.  I mean,

11    somebody who is calling up a lawmaker and says, you know, you

12    really shouldn't be pursuing that, that's a waste of taxpayer

13    money, we're going to go out and primary you, that's pretty

14    clearly an intent to obstruct.  But no one would say that that

15    was wrongful.  That's simply participating and partaking in the

16    democratic process.

17         Lawyers -- I mean, *Arthur Anderson* makes this point as

18    well.  Lawyers may advise their clients, don't turn over your

19    documents to this investigator or don't give documents in

20    response to this subpoena because you have a privilege or for

21    some reason.  Without a doubt, that is acting with intent to

22    obstruct, but that's not corruptly.  That's done through a

23    nonwrongful mechanism.

24         So those are versions of intent to obstruct or, you know,

25    obstructive behavior that is noncorrupt.  It would clearly fall

1   outside the ambit of certainly 1512(c)(2) and any other

2   obstruction statute that I'm aware of.

3          THE COURT:  Okay.  But when you consider purpose, is

4   there anything more in terms of intent to purpose other than the

5   intent to impair, intent to obstruct?

6          MR. PEARCE:  I don't -- I'm sorry.  I couldn't quite

7   catch the beginning of what Your Honor said, but --

8          THE COURT:  So does purpose need to be defined more

9   specifically than as you appear to be doing here, than just

10  consciousness of wrongdoing?  Is it anything more than that?  Is

11  it -- does the definition of corruptly include any additional

12  intent other than the specific intent to obstruct?

13         MR. PEARCE:  Yes, the wrongfulness and the language

14  that *Arthur Anderson* uses when defining the term corruptly and

15  says it's normally associated with things like evil, immoral,

16  depraved.  And I recognize the *Poindexter* case says well, these

17  are words that are, you know, arguably vague, but these are also

18  words that, I think, connote the level of seriousness with which

19  the defendant's actions must have taken place.

20      And if the Supreme Court blesses it in *Arthur Anderson*, I

21  think that that's language that properly guides a jury, and in

22  some ways, harkening back to the willfully example, it's no

23  harder or no more vague, let alone constitutionally vague, than

24  asking a jury to make determinations about whether someone has

25  acted willfully.  You do that all the time, and doing that in

1     this context of corruptly would really be no different.

2           THE COURT:  All right.  But I guess I'm hung up on

3     what wrongfulness means.  Is that just means, or is it a purpose

4     beyond a specific intent to obstruct?

5           MR. PEARCE:  So I think wrongfulness does encompass

6     means in some respects.  I think that's what 1505 -- the

7     definition from 1505 starts to drive at.  It defines -- it

8     starts with improper purpose.  It talks about that that can

9     include both directed towards others or personally.  And then it

10    gives some examples.  So I do think wrongfully involves some

11    inquiry into the means by which the defendant acts.

12          THE COURT:  And here in a case like this where we have

13    independent unlawful conduct alleged, alleged assaults on

14    federal officers that I assume that the government intends to

15    prove, show the evidence that this is the way in which the

16    defendants intended to obstruct the proceeding, correct me if

17    I'm wrong, but that's a central piece of your evidence of

18    specific intent to obstruct.

19        In this case is that enough by itself?

20          MR. PEARCE:  Yes and yes.  That is both a central part

21    of the government's evidence, and yes, independent unlawfulness

22    of this sort, I think, would.  Ultimately, that's a question

23    that a jury would have to determine and decide whether or not

24    they think that that is sufficiently wrongful and sufficiently

25    exhibits or at least other evidence alongside that sufficiently

1    shows a defendant's intent to obstruct and wrongfulness.  But

2    yes, that would be a critical and central part of the

3    government's evidence and argument.

4          THE COURT:  Then I guess that's just a means, isn't

5    it?  That means, that clearly unlawful conduct is sufficient, in

6    the government's view, to satisfy corruptly?

7          MR. PEARCE:  So not standing alone.  I think we would

8    need to adduce some evidence that showed that the defendants

9    intended to obstruct the proceeding, and I think that might be

10   things like the defendants' words or communications or things

11   like that, some of which is, I think, set out in the indictment

12   in this case.

13       So that type of evidence, I think, would illustrate and

14   prove up the defendant's intent, specific intent to obstruct the

15   proceeding, and then the type of assaultive behavior and means,

16   I think, would satisfy or at least tend to be relevant for the

17   consideration of the wrongfulness.

18         THE COURT:  But nothing more on top of that?  No

19   additional intent requirement?

20         MR. PEARCE:  That's not something that -- no is the

21   short answer.  That's the way that the courts have interpreted

22   1512(c)(2).  And again, that's how, I think, 1505's corruptly

23   definition also works.

24         THE COURT:  I guess I don't understand why, when the

25   government talks about defining corruptly, it resorts to this

language that's been criticized, you know, not just by
*Poindexter* but by other cases as well, *North* and *Reeves* and
others, why it resorts to this language about the person being
aware that what he is doing is wrong, immoral, depraved, or
evil.  It just seems so standardless.

MR. PEARCE:  So *Reeves* is a 1985 position.  *Poindexter*
and *North* are from the early '90s.  Congress overrules
*Poindexter*.  *Arthur Anderson* comes in 2005 and makes, I think,
clear what it's interpreting corruptly -- and it's not 1512(c).
It's 1512(b).  But it's using corruptly in the same statute,
that that has context.

And courts, since the inaction of 1512(c)(2) in 2002, have
consistently applied this type of definition, this consciousness
of wrongdoing or wrongfully alongside the attempt to obstruct.
That's the Seventh Circuit's pattern jury instructions for
1512(c), and that's how courts, I think, uniformly have
instructed on 1512(c)(2) cases.

So I take the Court's point that there is some criticism
from earlier on.  I think some of those issues, particularly in
*Reeves*, is linking that to 1503.  When *Aguilar* was decided --
when the Supreme Court decided *Aguilar* in 1995, they imposed a
nexus requirement, which is another limiting principle.  That
exists as a 1512(c)(2).

So there are limits built in that are -- other than, you
know, corruptly and nexus provide limits on the statute.  This

1   is a separate point.  But we are simply advocating for the

2   definition that is most widely used for this statutory

3   subsection.

4        THE COURT:  Okay.  But what about a situation where

5   you don't have independently unlawful conduct, so you don't have

6   the means like, you know, the assaults here that are obviously

7   unlawful?  What does consciousness of wrongdoing mean in that

8   context, and how do these words like wrong, immoral, depraved,

9   evil, how do they put the defendant on notice in that context?

10       MR. PEARCE:  I mean, again, these are words that have

11  been consistently used in the law.  Certainly, there are people

12  that can disagree as to whether a given action is, in fact,

13  wrongful or not.  Right?  And that's ultimately, I think,

14  something that a jury can decide.

15       But that is a question that is built into how we understand

16  what corruptly means.  It's a word that suggests -- not sort of

17  garden variety sort of -- I think Mr. Smith made the reference,

18  you know, not strict liability, not what, I think, the

19  *Morrissette* case would call a public welfare offense, but

20  something that is close to independent unlawfulness.

21       I think all of that provides enough context for a jury, and

22  certainly, again, we do that -- the system does that with things

23  like willfully.  Using the word bad purpose, people can ask what

24  is bad purpose.  Juries every day are asked to weigh on whether

25  or not a defendant is acting with bad purpose.  That's not a

1    constitutional vagueness claim.

2         In fact, Justice Scalia agreed and said look, it's easy to

3    imagine hard cases under virtually any statute.  The way to deal

4    with that is not through the constitutional vagueness doctrine;

5    it's through a beyond a reasonable doubt standard.

6         THE COURT:  I don't understand why in this case, where

7    you have -- and in, I think, most of these cases, if not all,

8    where the government has charged this obstruction charge and you

9    have independently unlawful conduct, why there's a need to

10   include this language about, you know, depraved, evil, wrong,

11   immoral.

12        You feel that that's necessary language that has to be in

13   there?

14        MR. PEARCE:  I mean, you know, as the Court said at

15   the top, discussions over the precise contours of the jury

16   instructions may be premature, but that's certainly language

17   that the Supreme Court has defined when talking about the

18   word corruptly.  I agree that in certainly this case and in the

19   Reffitt case and probably the lion's share of Capitol breach

20   cases will have independent unlawfulness, which might render

21   moot these other terms.

22        But again, if it's good enough for the Supreme Court, it

23   would seem like at least a starting point as a potential

24   definition for the term corruptly.

25        THE COURT:  So you're saying that based on *Arthur*

1    *Anderson*?

2              MR. PEARCE:  Yes, *Arthur Anderson*, yeah.

3              THE COURT:  And in that case the Court was looking at

4    document destruction; right?

5              MR. PEARCE:  That's right.

6              THE COURT:  And the government had proven that the

7    defendant destroyed documents with the intent to impair a

8    proceeding, but because their document retention policies and

9    other things that might be legitimate reasons for getting rid of

10   documents, the Supreme Court said that wrongfully also was

11   required; right?

12             MR. PEARCE:  I believe that's right, yeah.

13             THE COURT:  In that situation, you're dealing with

14   something with the administration of justice, with the truth-

15   finding function of a court, and in that context, corruptly

16   doesn't have to be a lot of extra work where you have the

17   specific intent to obstruct a proceeding by destroying

18   documents.

19        It just seems like with this statute, if you're talking

20   about corruptly influencing an official proceeding of Congress,

21   you're in a very different world where it just can't -- it can't

22   be the case that corruptly just means acting with awareness of

23   doing wrong, immoral, depraved, or evil actions.  That just

24   seems very far afield and vague and standardless.

25             MR. PEARCE:  So obviously, we disagree, and there

is -- sort of harkening back to the colloquy earlier, there are ways within the administration of justice where lawyers or even in the *Anderson* case itself, you know, there are arguments that somebody is acting with the intent to obstruct, and there can be a corrupt, that is, an evil or a bad or an immoral explanation, i.e. we are destroying these documents because we are trying to hide our criminality, or there can be a noncorrupt, that is, a not bad, you know, a not immoral, which is this is a part of our regular document retention policy, we just do this as a matter of course.

And the problem with *Arthur Anderson* is the same thing that would happen here.  Someone can go and advocate to a lawmaker and do that because they've got -- they have the intention to stop whatever action it is, and either they are doing it either using means or toward an end that is corrupt or it is not.

And I don't really see that the fact that one of these involves the administration of justice and one does not -- and certainly, there are no courts that I'm aware of that have drawn a distinction and the statute itself doesn't draw a distinction between corruptly obstructing an official proceeding, which of course Congress has defined it to include both sort of court proceedings and congressional proceedings, you know, and the Congress, the congressional setting alone.  There's just nothing in the case law that bears that out that I'm aware of.

THE COURT:  All right.  Let me ask you this,

Mr. Pearce:  Can corruptly in 1512(b)(2) be broadly defined to include any kind of unlawful conduct?  Assuming, of course, it's not -- it's too attenuated like -- I think the government has used the jaywalking example, and assuming, of course, it's -- whatever the unlawful act is is tied to a specific intent to impair the proceeding.  But any kind of unlawful act, not, you know, corruptly traditionally -- in the last hearing I had in Reffitt, looking at the statute, I was concerned because corruptly typically isn't the word used by Congress when it intends to cover conduct that involves uses of force or threats or intimidation or harassment where a defendant, an offender is stopping a witness or a juror or a judge, whatever the case may be, from being an official proceeding.  It seemed that Congress used different kinds of words to cover that kind of behavior, that kind of conduct.

And given -- is there any limit?  Is basically any criminal offense that can be tied to the official proceeding a sufficient nexus, and an intent to impair that proceeding by doing that unlawful act, is that enough for corruptly?

MR. PEARCE:  So I think as Your Honor built into the question -- first of all, there does have to be a close enough tie.  The rushing to the courthouse or to Congress and jaywalking in the context clearly would be too attenuated.

But in terms of the type of offense itself, I think that that might at the margins, as is true always in the law, pose

some hard questions.  I think there are potentially some public

welfare type of offenses as Judge Jackson defined them that

might fall outside of something that is -- and there's a 1914

case that suggests that wrongful and unlawful are not perfect

overlaps.

I don't think that's a question that is posed by -- that

raises any problems in this case for some of the reasons Your

Honor indicated when talking about the facts of this case.  But

by and large, yes, I think unlawful behavior that is undertaken

with the intent to obstruct an official proceeding will probably

satisfy, I would say in almost every case will satisfy the

corruptly requirement.

THE COURT:  Presumably, that would include

trespassing?

MR. PEARCE:  I think so, yeah.  I suppose it might

depend a little bit on the factual situation in which it's

happening.  But yeah, I think trespassing at a point --

trespassing that reaches the level of a federal offense where

you've got a restricted area because you have individuals

guarded by the Secret Service present, I think that could

satisfy it, yeah.

THE COURT:  Any other points, Mr. Pearce, you want to

make before I turn back to Mr. Smith and Mr. Shipley?

MR. PEARCE:  No.  I mean, I'm happy to address the

official proceeding piece, but I feel like we've said enough in

1    our brief, and so I don't need to make any affirmative arguments

2    unless the Court has particular questions.

3              THE COURT:  No (distorted audio).

4              COURTROOM DEPUTY:  Your Honor, I'm sorry.  We couldn't

5    hear what you said.

6              THE COURT:  I do have another matter at 3:00.  So I do

7    feel like I've had enough briefing and argument on that issue.

8         But Mr. Smith, Mr. Shipley, I want to give you a chance to

9    respond.

10             MR. SMITH:  Thank you, Your Honor.

11        You know, again, the point I would like to make is if just

12   trespassing is enough to be illegal under the obstruction

13   statute, that provides the corrupt state of mind, it sort of

14   gets back to my arbitrary enforcement thing.  Why are there

15   people who are charged with trespassing who are not charged with

16   1512(c)(2).  If that's enough, if they trespassed with an

17   awareness that their activity was affecting the official

18   proceeding, which almost certainly they would have had to have

19   had that knowledge, then why too aren't they charged with

20   1512(c)(2).

21        And that goes to my point that the government is using

22   1512(c) to arbitrarily prosecute people for its own specific

23   reasons, not because it thinks they have violated the statute

24   but for their own specific criteria unrelated to statutory

25   elements.

1          THE COURT:  But absent a claim of selective

2    prosecution, isn't it solely the executive's prerogative to

3    decide what offense to charge in any given case?

4          And this happens in drug cases.  Sometimes they charge

5    mandatory minimums; sometimes they don't.

6          Absent selective enforcement, which that claim has not been

7    made to date in this case, isn't that entirely the executive's

8    prerogative?

9          MR. SMITH:  There is -- to some extent.  But my bigger

10   point is that the statute is so vague that it is permitting

11   that, and it goes more to a facial challenge on not so much the

12   vagueness of the statute but the vagueness that the statute

13   would have if you endorse the government's reading of the

14   statute.

15         Therefore, I suggest that you need to read the statute more

16   narrowly, because the statute that the government is giving is

17   vague and allows for arbitrary enforcement, and therefore,

18   Congress couldn't have meant that.  They couldn't have meant

19   just to authorize the government to go around with this broad

20   statute and to prosecute some people and not others as they see

21   fit.  They meant something more specific than that.

22         And the limiting factor that has to be put in place on this

23   is the most that 1512(c)(2) can be read to include, consistent

24   with 1512(c)(1), is conduct that's directed to the mass of

25   evidence or testimony or stuff that it would consider.  That's

1    the way to limit it.

2         Because if you allow it to reach out to conduct that occurs

3    while the official proceeding is occurring, it opens the door to

4    everything, and then the government could just go around, you

5    know -- people that they think for their own reasons engaged in

6    more serious conduct, they can prosecute them, and the people

7    they don't think engaged in quite so serious conduct, they

8    cannot.

9         But that's not -- that's the government sort of legislating

10   it's more specific crime within the broad context that they

11   claim Congress has given them.  Congress doesn't work that way.

12   They didn't mean to provide a statute that would allow the

13   government to go around selectively enforcing it.  And it can't

14   be read that way.  That's the point that I'm trying to make.

15   They wouldn't have intended that.

16             THE COURT:  (Distorted audio.)

17             MR. SMITH:  I can't hear.

18             THE COURT:  I was turning to you, Mr. Shipley.

19        Sorry to cut you off, Mr. Smith.  I thought you were done.

20             MR. SMITH:  No, I'm sorry.  I'm done.  Thank you.

21             MR. SHIPLEY:  I have one comment -- I know that the

22   Court needs to go on to the next hearing -- and that is just

23   what came up right at the end of your discussion with

24   Mr. Pearce, the idea that the unlawful conduct of trespassing

25   could provide the government with the element it needs to prove

1     the specific state of mind for -- specific intent for the

2     1512(c)(2) charge.

3          What that means is that the government can take a

4     misdemeanor offense and convert it to a 20-year felony by

5     putting that misdemeanor offense as the basis for the 1512

6     charge, and I don't think there's any rational examination of

7     Congress's passage of 1512(c)(2) that can accommodate that

8     justification.

9                    THE COURT:  Mr. Pearce, anything else you want to add?

10                   MR. PEARCE:  Just very briefly.

11         Of course, the point on that very last point is we need to

12    prove, the government needs to prove under 1512(c) both intent

13    to obstruct and wrongfulness.  The fact that somebody has

14    criminally trespassed will not give you intent to obstruct.  It

15    might give you wrongfulness.  You will have to tie that trespass

16    to the actual official proceeding through a nexus.

17         So I don't think it's an accurate representation to suggest

18    that simply because there is trespass and, therefore, transform

19    it into a 1512(c)(2) violation.

20         And lo and behold, that is precisely how the charges in the

21    Capitol breach cases have shaken out.  It's not trespass alone.

22    It is trespass alongside the intent to obstruct the

23    certification proceeding.  And in some cases, we have charged

24    that because we think we can prove that beyond a reasonable

25    doubt, and in other cases where we don't think that's the case,

1    we have not.

2              THE COURT:  All right.  Anything else from -- I know

3    we need to discuss scheduling in the case.  Mr. Smith, I recall

4    last time you said that there were additional motions that you

5    would like to file.

6              MR. SMITH:  Yes, Your Honor.

7              THE COURT:  Is that still the case?

8              MR. SMITH:  Yes, Your Honor.  I guess we will need a

9    briefing schedule.  I will be filing some additional motions.

10             THE COURT:  Okay.  And what might those be?

11             MR. SMITH:  Probably a challenge on the 231 counts in

12   the indictment and also motions to suppress.

13             THE COURT:  Motion to suppress evidence seized?

14             MR. SMITH:  Yes, Your Honor, and I think I'm going to

15   file a motion to suppress the Facebook searches.

16             THE COURT:  How long do you need to file those

17   additional motions?

18             MR. SMITH:  Probably a month, Your Honor.  As far as

19   scheduling goes, I should mention one thing.  I think my

20   schedule is clearing out.  I have a trial in the United States

21   District Court for the District of Maryland in Baltimore that is

22   scheduled to start on the very last of January.  It's scheduled

23   to go from eight to ten weeks.  It's a five-defendant case.  I

24   don't think it's going to happen.  We have a hearing in front of

25   the judge, Judge Grimm, in Baltimore on December 17th, and the

1   purpose of the hearing is to pick a new trial date.  There's

2   been a lot of recent developments.  So I'm 95 percent certain

3   that that case is going to get a later trial date.  In fact, it

4   looks like we're talking about a trial a year out from now.

5   It's difficult to schedule because it's ten defense attorneys.

6   So I'm not 100 percent sure what's going to happen.

7        But if that does get continued, that sort of clears my

8   decks to deal with Mr. Sandlin's case, and I think it is.  I

9   would ask for maybe a month on pretrial motions at this point.

10            THE COURT:  Given the uncertainty of your schedule --

11   and Mr. Shipley, I assume you're filing additional motions as

12   well?

13            MR. SHIPLEY:  Yes, Your Honor.  Obviously, we got put

14   into a case with Mr. Sandlin, and a conspiracy count was added,

15   and it changes the calculus a little bit for how we might

16   approach the defense.  We need to consult with our client and

17   review all of the discovery of the two of them together and make

18   some decisions.

19        So I would like six or eight weeks, frankly, with the

20   holidays.

21            THE COURT:  Why don't I do this:  Let me set this far

22   enough out at a time that you all think is appropriate to have

23   if not a motions hearing a status hearing, and then you all,

24   Ms. Arco and Mr. Smith and Mr. John Pierce, you all confer about

25   a potential briefing schedule and propose something for me to

1    consider.  It sounds like there's some moving parts here.  So

2    rather than set a briefing schedule now that we may have to

3    continue, I would prefer that you all confer and then propose

4    one.

5        Given that, Mr. Smith and Mr. Pierce, what do you think

6    makes sense in terms of coming back?  Would you like to push

7    this off a long enough period of time in order for me to address

8    the forthcoming motions, or would you prefer to set a status

9    hearing sooner than that?

10           MR. SMITH:  Your Honor, my preference would be for a

11   fairly quick status hearing, maybe after my December 17th

12   hearing in front of Judge Grimm, because I can then make some

13   very definitive scheduling calls at that point.

14       I know Mr. Sandlin is anxious to get this case tried, which

15   I understand, especially given the fact that he is being

16   detained.  And I don't know what Your Honor's schedule is, if we

17   were to pick a trial date, what time period we're looking at.

18   If my case in January gets continued, as I hope -- as I'm almost

19   certain it will be, I'm pretty free all of 2022, the early part

20   of 2022 to try --

21           THE COURT:  It sounds like you're giving me a lot of

22   additional motions.  So I'm not right now contemplating an early

23   2022 trial in this case.

24           MR. SMITH:  I don't expect my motions to be

25   particularly complicated, but I do think there's a 231 issue

that needs to be put out there, and there's also motions to

suppress on the Facebook that need to be put out there.  I don't

think they're going to be particularly complicated, not like the

1512 motion, for instance.

THE COURT:  I hope not.

All right.  Why don't we do this:  Why don't we set a

status hearing for the first week in January.  How does

January 5th work for both sides, 10:00 a.m.?

MR. PIERCE:  That's fine with me, Your Honor.

MS. ARCO:  That works for the government, Your Honor.

MR. SMITH:  Yes, Your Honor, that works for me.

THE COURT:  So we will return January 5th at

10:00 a.m.

COURTROOM DEPUTY:  Your Honor, forgive me.  Since we

have two defendants, 10:00 a.m. won't work.

THE COURT:  What do you propose?

COURTROOM DEPUTY:  Can we do 12:30?

THE COURT:  That's fine with me.  Does that work for

everyone else?

MR. SMITH:  Yes, Your Honor.

MS. ARCO:  Yes, Your Honor.

MR. PIERCE:  Yes, Your Honor.

THE COURT:  We will return at 12:30 on January 5th.

And if I haven't set a briefing schedule by that time, I

will do so then.  So you all need to file some time in late

1   December, if not before, a proposed schedule for briefing on

2   these motions, and we will address more scheduling issues at

3   that time.

4       But given the defense's need to assess the filing of

5   additional motions, and I know there's still, Ms. Arco, some

6   forthcoming discovery -- is that right?

7           MS. ARCO:  Yes, Your Honor.

8           THE COURT:  It does seem it is in the interest of

9   justice to exclude time under the Speedy Trial Act from now

10  until January 4th in calculating the date for speedy trial.

11      Any objection, Mr. Smith?

12          MR. SMITH:  Not at this point, Your Honor.

13          THE COURT:  Okay.  Mr. Pierce?

14          MR. PIERCE:  Pending I have a different view from

15  Mr. Shipley, no, Your Honor, that's fine.

16          COURTROOM DEPUTY:  Your Honor, you said January 4th

17  for speedy trial?

18          THE COURT:  I'm sorry.  I meant to say January 5th.

19  So I am excluding time from now until January 5th of 2022 with

20  the defendants' consent.  I do find it's in the interest of

21  justice in order to give the defense time to evaluate the

22  motions to file and obtain additional discovery and make

23  decisions on how best to defend this case.

24      So we will return on January 5th at 12:30.

25      Is there anything else, Ms. Arco?

1            MS. ARCO:  No, Your Honor.  Thank you.

2            THE COURT:  Okay.  Counsel for either side?

3            MR. PIERCE:  Nothing, Your Honor.

4            MR. SMITH:  No, Your Honor.

5            THE COURT:  All right.  Thank you all.

6        (Proceedings adjourned at 3:13 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER


1
2
3        I, Sara A. Wick, certify that the foregoing is a
4   correct transcript from the record of proceedings in the
5   above-entitled matter.
6
7        Please Note:  This hearing occurred during the
8   COVID-19 pandemic and is, therefore, subject to the
9   technological limitations of court reporting remotely.
10
11
12  /s/ Sara A. Wick                January 3, 2022
13  SIGNATURE OF COURT REPORTER          DATE